**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RYAN ERIC POUST, | : | **3:14cv1357** |
| Plaintiff | : | |
| | : | **(Judge Munley)** |
| v. | : | |
| | : | |
| CAROLYN W. COLVIN, Acting | : | |
| Social Security Commissioner, | : | |
| Defendant | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Before the court for disposition is Plaintiff Ryan Eric Poust's (hereinafter "plaintiff") appeal from a final administrative decision of the Social Security Commissioner denying his claim for supplemental security income benefits.[1] (Doc. 1).

**Background**

On November 24, 2010, plaintiff filed a protective application for supplemental security income (hereinafter "SSI") benefits due to asthma, chronic obstructive pulmonary disorder (hereinafter "COPD"), blindness in the left eye, gastroesophageal reflux disorder and emphysema.[2] (Doc. 7, Admin.

―――――――――――――――

[1] Supplemental security income (hereinafter "SSI") is a federal income supplement program funded by general tax revenues (not social security taxes). 42 U.S.C. § 1381. It is designed to help the aged, blind or disabled individuals who have little or no income. 42 U.S.C. § 1381a. Insured status is irrelevant in determining a claimant's eligibility for supplemental security income benefits. 42 U.S.C. § 1382.

[2] "Protective filing" is a term describing the first time an individual contacts the Social Security Administration to file a claim for benefits. See 20 C.F.R. § 416.340; see also SOC. SEC. ADMIN. PROGRAM OPERATIONS MANUEL SYS., GN 00204.010. A protective filing date allows an individual to have an

R. (hereinafter "R.") at 21, 68).[3]  On May 25, 2011, the Bureau of Disability Determination denied plaintiff's application.  (R. at 19).  Plaintiff then filed a request for a hearing before an administrative law judge (hereinafter "ALJ").

ALJ Michele Stolls held a hearing on July 17, 2012.  (R. at 32-63).  At the hearing, the ALJ noted that plaintiff was forty-three (43) years old and cares for his son every other weekend.  (R. at 24, 38-39).  The ALJ also indicated that plaintiff is not currently working and relies on his father to pay his expenses.  (R. at 24).  Plaintiff recently stopped smoking and began eating healthier resulting in the loss of fifty (50) pounds from January 2011 to July 2011.  (R. at 24, 37).  As of the date of the ALJ hearing, plaintiff weighed 198 pounds.  (Id.)

Plaintiff testified that he has a driver's license and has no issues with driving.  (R. at 24, 41).  Plaintiff is Christian, but he does not attend church services.  (R. at 43).  He also enjoys watching sports.  (Id.)

Plaintiff indicated that he cannot work because he suffers from shortness of breath and fatigue.  (R. at 24, 44).  He can sit for thirty (30) minutes before his back starts to hurt and he begins to feel sleepy.  (Id.)  His

---

earlier application date than the date the application is actually signed.   20 C.F.R. § 416.340.

   [3] References to "R. at __" are to pages of the administrative record filed by the Defendant as part of his Answer on September 23, 2014.

treating physician has prescribed a nebulizer, inhalers and stomach medications.  (R. at 24).  Plaintiff uses his nebulizer five (5) times a day, every day and uses his inhalers 3-4 times a day as needed.  (Id.)  He also takes hydrocodone for back pain and is often prescribed the steroid Prednisone to help control his breathing difficulties.  (Id.)

In a decision issued November 5, 2012, the ALJ denied plaintiff's claim, finding that he was not "disabled" as of November 24, 2010 and thus not entitled to benefits.  (R. at 27).  Plaintiff then filed for review before the Social Security Administration Office of Disability Adjudication and Review Appeals Council.  (R. at 14-15).  The Appeals Council denied the request for review on May 19, 2014.  (R. at 2-6).  Thus, the ALJ's decision became the final decision of the Commissioner of Social Security in plaintiff's case. Subsequently, plaintiff instituted the instant action to challenge the denial of benefits.  (Doc. 1, Compl.).  He argues that substantial evidence fails to support the ALJ's decision.  The matter has been fully briefed and is ripe for disposition.

**Jurisdiction**

The court has federal question jurisdiction over this Social Security Administration appeal.  See 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing under paragraph (1)

3

shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); see also 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.  Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business . . . .").

**Standard of Review**

In reviewing a social security appeal, the court must determine whether "substantial evidence" supports the ALJ's decision. See 42 U.S.C. § 405(g); Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).  The United States Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966).  The Third Circuit Court of Appeals has explained that "substantial evidence has been defined as 'more than a mere scintilla;' it means 'such relevant evidence as a reasonable mind

4

might accept as adequate.'"  Hagans, 694 F.3d at 292 (quoting Plummer, 186 F.3d at 427).

The court should not reverse the Commissioner's findings merely because evidence may exist to support the opposite conclusion.  See 42 U.S.C. § 405(g); Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005) (stating that courts may not weigh the evidence or substitute its own conclusion for those of the fact-finder); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir.2001) (indicating that when an ALJ's findings of fact are supported by substantial evidence, courts are bound by those findings, even if they would have decided the factual inquiry differently).  In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence."  Consolo, 383 U.S. at 620.

Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter v. Harris, 642 F.2d 700, 706 (3d Cir. 1981) and "must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971).  "When a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason."  Plummer, 186 F.3d at

5

429 (quoting <u>Mason v. Shalala</u>, 994 F.2d 1058, 1066 (3d Cir. 1993)).  The

Commissioner must indicate which evidence was accepted, which evidence

was rejected, and the reasons for rejecting certain evidence.  <u>Johnson v.

Comm'r of Soc. Sec.</u>, 529 F.3d 198, 204 (3d Cir. 2008).  Therefore, a court

reviewing the decision of the Commissioner must scrutinize the record as a

whole.  <u>Smith v. Califano</u>, 637 F.2d 968, 970 (3d Cir. 1981).

Another critical requirement is that the Commissioner adequately

develop the record.  <u>Poulous v. Comm'r of Soc. Sec.</u>, 474 F.3d 88, 95 (3d Cir.

2007) (reminding ALJs of their duty to develop the record); <u>Ventura v. Shalala</u>,

55 F.3d 900, 902 (3d Cir. 1995) (stating that ALJs have an affirmative duty to

develop a full and fair record in social security cases).   If the record is not

adequately developed, remand for further proceedings is appropriate.  <u>Diaz v.

Comm'r of Soc. Sec.</u>, 577 F.3d 500, 505 (3d Cir. 2009).

**Discussion**

**Sequential Evaluation Process**

To receive disability benefits, the plaintiff must demonstrate an "inability

to engage in any **substantial gainful activity** by reason of any medically

determinable physical or mental impairment which can be expected to result

in death or which has lasted or can be expected to last for a continuous

period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (emphasis

added).  An individual is incapable of engaging in "substantial gainful activity"

when "his physical or mental impairment or impairments are of such severity

that he is not only unable to do his previous work but cannot, considering his

age, education, and work experience, engage in any other kind of substantial

gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

The Commissioner evaluates disability insurance and supplemental

security income claims with a five-step sequential analysis.  20 C.F.R.

§ 416.920(a)(4).  This analysis requires the Commissioner to consider, in

sequence, whether a claimant (1) is engaging in substantial gainful activity,[4]

(2) has an impairment, or combination of impairments, that is severe,[5] (3) has

---

[4] "Substantial gainful activity" is work that "involves doing significant and productive physical or mental duties" and "is done (or intended) for pay or profit."  20 C.F.R. § 416.910.  If the claimant is engaging in "substantial gainful activity", the claimant is not disabled and the sequential evaluation proceeds no further.

[5] The determination of whether a claimant has any severe impairments that has lasted or is expected to last for a continuous period of at least twelve (12) months, at step two of the sequential evaluation process, is a threshold test.  20 C.F.R. § 416.920(c).  If a claimant does not have an impairment or combination of impairments which significantly limits his physical or mental abilities to perform basic work activities that has lasted or is expected to last for a continuous period of at least twelve (12) months, the claimant is "not disabled" and the evaluation process ends at step two.  Id.  If a claimant has any severe impairments, the evaluation process continues.  20 C.F.R. § 416.920(d)-(g).  Furthermore, all medically determinable impairments, severe and non-severe, are considered in the subsequent steps of the sequential evaluation process.  20 C.F.R. §§ 416.923 and 416.945(a)(2).  An

an impairment or combination of impairments that meets or equals the requirements of a "listed impairment,"[6] (4) has the "residual functional capacity" to return to his or her past work and (5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. § 416.920(a)(4)(i)-(v). Prior to addressing step four, the ALJ must determine the claimant's residual functional capacity.[7]  20 C.F.R. § 416.920(a)(4)(iv).

Residual functional capacity is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular

_____

impairment significantly limits a claimant's physical or mental abilities when its effect on the claimant to perform basic work activities is more than slight or minimal.  Basic work activities include the ability to walk, stand, sit, lift, carry, push, pull, reach, climb, crawl and handle.  20 C.F.R. § 404.1545(b).  An individual's basic mental or non-exertional abilities include the ability to understand, carry out and remember simple instructions, and respond appropriately to supervision, coworkers and work pressures.  20 C.F.R. § 1545(c).

[6]  A "listed impairment" is one that appears on the Commissioner's Listing of Impairments, which is "a list of impairments presumed severe enough to preclude any gainful work."  Sullivan v. Zebley, 493 U.S. 521, 525 (1990); see 20 C.F.R. pt. 404, subpt. P, app. 1 (stating the listing of impairments).  If the claimant has an impairment, or combination of impairments, that meets or equals a listed impairment, the claimant is disabled.  If the claimant does not have an impairment or combination of impairments that meets or equals a listed impairment, the sequential evaluation process proceeds to the next step.

[7]  If the claimant has the residual functional capacity to do his or her past relevant work, the claimant is not disabled.

8

and continuing basis.  <u>See</u> SSR 96-8p, 1996 WL 374184.[8]  A regular and

continuing basis contemplates full-time employment and is defined as eight

hours a day, five days per week or other similar schedule.  <u>Id.</u>  The residual

functional capacity assessment must include a discussion of the individual's

abilities.  <u>Id.</u>; 20 C.F.R. § 416.945; <u>Fargnoli</u>, 247 F.3d at 40 (defining residual

functional capacity as that which an individual is still able to do despite the

limitations caused by his or her impairment(s)).

In the instant case, the ALJ found at step one that plaintiff has not

engaged in substantial gainful activity since November 24, 2010.  (R. at 21).

Next, she found that plaintiff has the severe impairments of: obesity, COPD,

asthma, emphysema and chronic bronchitis, multiple lung nodules,

obstructive sleep apnea, tobacco use, blindness in the left eye status post

enucleation, chronic rhinitis and lumbago with past history of spinal fusion.

(R. at 21).  At step three, the ALJ determined that the plaintiff does not have

an impairment or combination of impairments that meets or medically equals

---

[8]  Social Security Rulings (hereinafter "SSR") constitute the Social
Security Administration's interpretations of the statute it administers and of its
own regulations.  <u>Chavez v. Dep't of Health & Human Servs.</u>, 103 F.3d 849,
851 (9th Cir.1996).  SSRs do not have the force of law, <u>id.</u>; nevertheless,
once published, they are binding on all components of the Social Security
Administration.  <u>Walton v. Halter</u>, 243 F.3d 703, 708 (3d Cir. 2001); 20 C.F.R.
§ 402.35(b)(1).

the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P,

Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526).

Prior to addressing step four, the ALJ determined that the plaintiff has

the residual functional capacity (hereinafter "RFC") to perform light work, but

with the following limitations:

> [Plaintiff's] ability to work at [the light work] level is reduced in that he is limited to occupations that require no more than occasional postural maneuvers such as balancing, stooping, kneeling, crouching, crawling and climbing on ramps and stairs. He must avoid occupations that require climbing on ladders, ropes or scaffolds. The claimant must avoid concentrated prolonged exposure to fumes, odors, dusts, gases, chemical irritants, environments with poor ventilation, temperature extremes and extremes of dampness and humidity. The claimant is further limited to occupations that do not require exposure to hazards such as dangerous machinery and unprotected heights or requiring visual acuity or depth perception with the left eye, which is blind. He is limited to occupations requiring no more than simple, routine tasks not performed in a fast-paced production environment, involving only simple, work related decisions and, in general, relatively few work place changes.

(R. at 23). Because of this RFC, the ALJ concluded that plaintiff is unable to

perform his past relevant work as a construction laborer, truck driver, salvage

laborer and cabinetmaker. (R. at 26).

Finally, based upon the testimony of the vocational expert, and a

hypothetical question that the ALJ posed to her, the ALJ concluded at step

five that occupations exist in the national economy that the plaintiff can

perform.  (R. at 27).  These occupations include: cashier, office helper, folder, order clerk, assembler and quote clerk.  (Id.)

Plaintiff's appeal raises the following two issues: 1) Did the ALJ improperly reject relevant medical opinions when determining plaintiff's residual functional work capacity? and 2) Did the ALJ commit error in rejecting plaintiff's subjective testimony?  We will address these issues in turn.

**A.  The ALJ's rejection of Dr. John's opinions**

In the instant matter, Dr. Maliyakkal John provided two medical opinions–one opinion as a consultative medical examiner on April 30, 2011 and a second opinion, sixteen (16) months later, as plaintiff's treating physician on August 15, 2012.[9]  (R. at 349-53, 420-23).   We address each medical opinion in turn.

**1.  Dr. John's April 30, 2011 consultative opinion**

As a consultative medical examiner, Dr. John opined that plaintiff could lift and carry twenty-five (25) pounds occasionally and twenty (20) pounds

---

[9]  Dr. John was not plaintiff's primary treating physician on the date of Dr. John's consultative examination.  Plaintiff testified at the hearing, however, that Dr. John "talked to me a little bit after my [consultative] examination and I liked him and he explained stuff to me, so I asked him if he would be my primary doctor and he said absolutely."  (R. at 50).  Thereafter, Dr. John examined plaintiff fifteen (15) times over a sixteen (16) month period prior to rendering his primary treating medical source statement on August 15, 2012.  (R. at 405-423).

frequently, could stand and walk only two hours in an eight-hour workday, could sit less than six (6) hours in an eight-hour workday, had limited ability to push/pull with his lower extremities, and could only occasionally bend, kneel, stoop, crouch, balance and crawl.  (R. at 349-53).  Dr. John further noted plaintiff had a history of lumbar spine fusion, knee repair and enucleation–surgical removal–of the left eye.  (Id.)  Finally, Dr. John's exam revealed bilateral rhonchi and wheezing in both lung fields with decreased air entry in the bases of both lungs.  (Id.)

The ALJ considered Dr. John's April 2011 opinion and determined the following:

> [G]reat weight is given to the opinion of Dr. Maliyakkal John . . . that claimant could lift and carry 20 pounds frequently and 25 pounds occasionally.  However, little weight is given to his opinion that the claimant could stand/walk for 1 to 2 hours in an 8-hour day, sit for less that 6 hours in an 8-hour day or perform limited pushing/pulling with the lower extremities, as these are not supported by his own physical examination which was essentially normal and appear to be based on the claimant's subjective complaints.

(R. at 25).  The ALJ's assessment of Dr. John's consultative opinion, however, fails to contain specific reasons for assigning little weight to portions of this opinion regarding plaintiff's sitting, standing and walking limitations. "When a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'"  Plummer,

186 F.3d at 429 (quoting Mason v. Shalala, 994 F.2d at 1066 ).  The ALJ

must indicate which evidence was accepted, which evidence was rejected,

and **the reasons for rejecting certain evidence**.  Johnson, 529 F.3d at 204

(emphasis added).

Further, Dr. John's report never states that he based his conclusions on

plaintiff's subjective complaints.  Yet, the ALJ speculated that Dr. John's

conclusions "appear to be based on the claimant's subjective complaints."   In

short, the ALJ found the plaintiff not credible, and therefore, discredited Dr.

John's consultative report because it was allegedly based on statements from

the plaintiff.  Accordingly, substantial evidence fails to support the ALJ's

assessment of Dr. John's April 2011 opinion because she failed to fully

explain her reasons for rejecting portions of Dr. John's consultative opinion

and, instead, engaged in improper speculation.[10]

---

[10]  The court also disagrees with the ALJ's determination that Dr. John's
April 2011 consultative medical opinion is substantial evidence supporting or
opposing plaintiff's benefits claim.  Specifically, "substantial evidence" is
"such relevant evidence as a reasonable mind might accept as adequate to
support a conclusion."  Consolo 383 U.S. at 620.  In the instant case, Dr.
John, in addition to his consultative opinion, rendered a treating physician
opinion in August 2012 after personally examining the plaintiff on a monthly
basis from May 2011 to August 2012.  (R. at 405-19).  Therefore, Dr. John's
treating source opinion greatly diminishes, if not completely abates, any
relevance of his consultative opinion eschewing the ALJ's need to address Dr.
John's consultative opinion in the first instance.

## 2. Dr. John's August 2012 treating physician opinion

Plaintiff next contends that the ALJ improperly assessed Dr. John's treating physician opinion.  On August 15, 2012, Dr. John rendered a second medical opinion after seeing plaintiff on a monthly basis from May 2011 to August 2012.  (R. at 405-19).  Dr. John opined plaintiff can sit one hour at a time, but less than two hours in an eight-hour workday; stand twenty (20) minutes at a time, but stand and walk less than two (2) hours in an eight-hour workday; lift and carry less than ten (10) pounds occasionally; and walk one-quarter (1/4) of a block at a time.  (R. at 421-22).  Dr. John also noted plaintiff experiences shortness of breath, hot/cold sensations, dizziness, fatigue, low back pain, and chest heaviness/pressure.  (R. at 420).  Finally, Dr. John explained that plaintiff has COPD and needs "very frequent bronchodilator therapy."  (Id.)

The ALJ assessed Dr. John's second medical opinion as follows:

> [L]ittle weight is given to Dr. John's [August 2012] opinion, which was received post hearing . . . that indicates that the claimant could not work for a full 8-hour day due to chronic obstructive pulmonary disease and low back pain.  Dr. John is neither a pulmonary specialist nor orthopedic specialist.  This opinion is not supported by the overall objective medical record or the claimant's own testimony.

(R. at 26).

The Third Circuit Court of Appeals recognizes that the "opinions of a

14

claimant's treating physician are entitled to substantial and at times even controlling weight." Fargnoli, 247 F.3d at 43; see also Brownawell v. Comm'r of Soc. Sec., 554 F.3d 352, 355 (3d Cir. 2008) (stating that "an ALJ should give treating physicians' reports great weight, especially when their opinions reflect expert judgement based on a continuing observation of the patient's condition over a prolonged period of time.") (citation and internal quotation marks omitted).  A treating physician's report should be accorded great weight "when the opinion reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." Pododworny v. Harris, 745 F.2d 210, 217 (3d Cir. 1984); 20 C.F.R. § 404.1527(c)(2)(i).

The treating source's opinion is entitled to controlling weight, however, "only when it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record . . . .'"[11]  Johnson, 529 F.3d at 202

---

[11]  When a treating source's opinion is not entitled to controlling weight, it is evaluated and weighed under the same standards applied to all other medical opinions, taking into account numerous factors including the opinion's supportability, consistency and specialization.  See 20 C.F.R. § 404.1527(c)(2).  An ALJ need not defer to a treating physician's opinion about the ultimate issue of disability because that determination is an administrative finding reserved to the Commissioner.  See 20 C.F.R. § 404.1527(d).

(quoting 20 C.F.R. § 404.1527(c)(2)).   When the treating physician's opinion

conflicts with a non-treating, non-examining physician's opinion, the ALJ may

choose whom to credit in his or her analysis, but "cannot reject evidence for

no reason or for the wrong reason."   Morales v. Apfel, 225 F.3d 310, 317 (3d

Cir. 2000).

In choosing to reject the evaluation of a treating physician, an ALJ may

not make speculative inferences from medical reports and may reject treating

physician's opinions outright only on the basis of contradictory medical

evidence.  Id. at 317 (citations omitted).  An ALJ may not reject a written

medical opinion of a treating physician based on his or her own credibility

judgments, speculation or lay opinion.  Id.  An ALJ may not disregard the

medical opinion of a treating physician based solely on his or her own

"amorphous impressions, gleaned from the record and from his evaluation of

the [claimant]'s credibility."  Id. at 318 (citation omitted).

In the instant matter, the ALJ's analysis of Dr. John's August 2012

treating physician's opinion is inadequate for two reasons.  First, the ALJ fails

to explain why this medical opinion "is not supported by the overall objective

medical record or the claimant's own testimony."  (R. at 26).  The ALJ fails to

cite to any pulmonary function report regarding the present state of plaintiff's

COPD.  The ALJ fails to discuss any report from any physician, which

contradicts Dr. John's assessment.

Second, the ALJ failed to explain why recent probative medical evidence did not support Dr. John's opinion.  Specifically, Dr. Simonelli, a pulmonary specialist, performed a series of pulmonary function tests (hereinafter "PFT") on plaintiff.  The most recent PFT, which occurred on June 27, 2011, noted that plaintiff's lung capacity was normal.  (R. at 390-91).  Dr. Simonelli indicated, however, that plaintiff's diffusion capacity, the lung's ability to exchange oxygen and carbon dioxide, was mildly reduced, giving the impression of moderate COPD.  (Id.)

Confronted with this probative evidence of an impairment, the ALJ was required to explain why this evidence was rejected.  See Johnson, 529 F.3d at 204 (stating that an ALJ may not reject pertinent or probative evidence without explanation); Cotter, 642 F.2d at 706 (stating that "there is a particularly acute need for some explanation by the ALJ when s/he has rejected relevant evidence or when there is conflicting probative evidence in the record.").  As such, substantial evidence fails to support the ALJ's assessment of Dr. John's August 2012 treating physician opinion.

**B.  Did the ALJ improperly reject plaintiff's testimony?**

Plaintiff next argues that the ALJ misconstrued his testimony regarding his daily living and social activities when determining his RFC.  The defendant

17

asserts the Commissioner's RFC determination was proper.

In the instant matter, the ALJ concluded that plaintiff's RFC to perform light work was "consistent with the claimant's activity level as indicated by his ability to prepare his own meals, do his own laundry and hunt." (R. at 26). Specifically, the ALJ found plaintiff had no restrictions in daily living and social functioning activities. (R. at 22). She concluded plaintiff "lives alone, sometimes makes meals, he does laundry, drives and is responsible for his son every other weekend. [Plaintiff] has hunted since the alleged onset of disability, although not like he used to." (Id.) In social functioning, plaintiff sometimes socializes with a friend, went to a New York Yankees baseball game in July 2012 and has a friend who brings him food. (Id.)

The ALJ may have exaggerated the scope of plaintiff's daily living and social functioning activities. For example, the ALJ indicated that plaintiff attended a Yankees baseball game a couple of weeks before his ALJ hearing. (R. at 24). The ALJ, however, failed to disclose that plaintiff: (1) did not drive to the game and (2) had to alternate between sitting and standing at the game. (R. at 42). Additionally, the ALJ discussed plaintiff's ability to hunt in November 2011. While the plaintiff did hunt for deer in November 2011, the ALJ failed to mention that plaintiff hunted from inside his stationary car on a friend's property for thirty (30) minutes at a time. (R. at 43-44). After thirty

18

(30) minutes, plaintiff drove to his friends house to warm up.  Plaintiff did not trek miles into unknown woods and hunt for extended periods of time

Evidently, the ALJ may have exaggerated the scope of plaintiff's daily living and social functioning activities because she found plaintiff less than credible.  Having determined remand is appropriate for the reasons above, the court need not render a decision regarding the ALJ's assessment of plaintiff's testimony.  The ALJ, however, must revisit the issue of plaintiff's credibility on remand.

**Conclusion**

For the above-stated reasons, the court finds that substantial evidence does not support the Commissioner's decision.  The court will remand this case to the Commissioner with instructions to re-evaluate the matter, including the opinions of Dr. John and plaintiff's credibility.  The Commissioner may also collect such evidence and hold hearings as she finds appropriate.  An appropriate order follows.

Date:   05/26/2015                     s/ James M. Munley
                                       **JUDGE JAMES M. MUNLEY**
                                       **United States District Court**